228                September 25, 2025                No. 37

IN THE SUPREME COURT OF THE
STATE OF OREGON


In the Matter of S. H. A., aka S. H. P., aka S. T., aka S. T.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*and*

S. H. A.,
aka S. H. P., aka S. T., aka S. T.,
and Pit River Tribe,
*Respondents on Review,*

*v.*

M. G. J.,
*Petitioner on Review.*

In the Matter of K. O. A., aka P. J. R. J.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*and*

K. O. A.,
aka P. J. R. J.,
and Pit River Tribe,
*Respondents on Review,*

*v.*

M. G. J.,
*Petitioner on Review.*

(CC 20JU02316; 20JU06985)
(CA A181035 (Control); A181037) (SC S070679)


En Banc

On review from the Court of Appeals.*

Argued and submitted June 20, 2024.

_____

\* Appeal from Jackson County Circuit Court, Timothy C. Gerking, Judge. 329 Or App 101, (2023) (nonprecedential memorandum opinion).

Kristen G. Williams, Williams Weyand Law, LLC., Salem, argued the cause and filed the briefs for petitioner M. G. J. Also on the briefs were Shannon Storey, Chief Defender, and Tiffany C. Keast, Deputy Public Defender, Oregon Public Defense Commission, Salem.

Erin K. Galli, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent Department of Human Services. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Erica Hayne Friedman, Youth, Rights & Justice, Portland, argued the cause and filed the brief for respondent S. H. P., and P. J. R. J.

Simon W. Gertler, California Indian Legal Services, Sacramento, California, argued the cause and filed the brief for respondent Pit River Tribe. Also on the brief were Jay P. Petersen, and Jason Golfinos.

Craig J. Dorsay, Dorsay & Easton LLP, Portland, filed the brief for *amici curiae* Confederated Tribes of Siletz Indians of Oregon; Confederated Tribes of Warm Springs Reservation of Oregon; and Confederated Tribes of Umatilla Indian Reservation. Also on the brief were Lea Ann Easton, and Kathleen M. Gargan, Dorsay & Easton, LLP, Portland; Howard G. Arnett and Sarah Monkton, Best Best & Krieger, LLP, Bend; and M. Brent Leonhard, Office of Legal Counsel for the Confederated Tribes of Umatilla Indian Reservation, Pendleton.

DeHOOG, J.

The decision of the Court of Appeals and the judgments of the circuit court are affirmed.

Bushong, J., concurred and filed an opinion, in which Masih, J., joined.

**DeHOOG, J.**

This Oregon Indian Child Welfare Act (ORICWA) case requires us to determine whether, before accepting an order or judgment of tribal customary adoption (TCA) from an Indian child's tribe, a juvenile court must conduct a contested evidentiary hearing under ORS 419B.656 (the TCA statute) to ensure that the requirements of that statute are satisfied. In this case, following a contested hearing under the permanency statute, ORS 419B.476, the juvenile court ordered that the case plan for mother's two children change from reunification to TCA. The court then asked the children's tribe to submit a tribal order or judgment reflecting that TCA had been completed. *See* ORS 419B.476 (permanency hearings); ORS 419B.476(2)(e), (5)(g) (authorizing court to consider and choose TCA as permanency plan for an Indian child); ORS 419B.476(7)(d)(A) (if juvenile court determines that TCA is appropriate permanent placement and child's tribe consents, court must request that tribe submit formal tribal documentation reflecting completion of TCA). The court then scheduled another hearing to decide whether to accept the tribe's submission. Upon determining at that hearing (TCA hearing) that the tribe's resolution met the requirements of the TCA statute and that the statute was otherwise satisfied, the juvenile court accepted the tribe's resolution and entered judgment accordingly.

The issue on review is whether the juvenile court complied with the TCA statute in approving TCA for mother's children. Mother's primary contention on review is that the juvenile court was required—*after* the tribe had submitted its documentation demonstrating its completion of TCA for her children—to conduct an evidentiary hearing at which she could contest the court's decision to approve TCA. As we will explain, we conclude that neither ORICWA, nor the TCA statute, requires a juvenile court to hold a contested evidentiary hearing following a tribe's completion of its own TCA process to determine whether (1) the tribe's submission satisfies the requirements of the TCA statute, or (2) TCA should be a child's ultimate placement. We therefore affirm the juvenile court's judgments and the decision of the Court of Appeals.

## I.   BACKGROUND

The relevant factual and procedural history of this case involves the overlay between (1) juvenile dependency proceedings—particularly permanency proceedings—and (2) the requirements of ORICWA as they relate to permanency decisions. Thus, before further discussing the issues on review, the parties' respective contentions, and the relevant history of mother's dependency case, we first provide some general background regarding the underlying statutory scheme.

A.   *Statutory Framework*

1.   *Juvenile permanency proceedings*

A juvenile court having jurisdiction over a child must establish a permanent plan for that child. ORS 419B.470 (initial permanency hearing; subsequent hearings); *see also* ORS 419B.100 (juvenile court jurisdiction); *see generally* ORS ch 419B (juvenile dependency). Once a case plan has been established for a child, the juvenile court must, from time to time, hold permanency hearings, at which time the court may either continue an existing plan or, subject to various procedural requirements, change the plan to the concurrent plan or another appropriate permanent placement. ORS 419B.470(6) (permanency hearing to be held upon request of a party); ORS 419B.470(7) (requiring subsequent permanency hearings at intervals of no more than 12 months); ORS 419B.476 (setting forth determinations to be made at permanency hearings, placement options available to juvenile court, and required contents of resulting judgment).

2.   *ORICWA*

In 2020, the legislature enacted ORICWA, which provides, among other things, specific protections for Indian children who become involved in Oregon's child welfare system. Or Laws 2020, ch 14, §§ 1-66 (Spec Sess 1), *codified as* ORS 419B.600  ORS 419B.654.[1] ORICWA both added to and amended Oregon's existing juvenile dependency code, ORS

---

[1] The legislature enacted the TCA statute as an addition to ORICWA the next year.  Or Laws 2021, ch 398, § 65, *codified as* ORS 419B.656.  Except when referencing specific legislative acts or statutory provisions, we refer to the provisions of ORICWA and the TCA statute collectively as "ORICWA."

chapter 419B. In enacting ORICWA, the legislature explicitly "recognize[d] the inherent jurisdiction of Indian tribes to make decisions regarding the custody of Indian children." ORS 419B.600. Consistent with the underlying policy of "protect[ing] the health and safety of Indian children and the stability and security of Indian tribes and families," ORICWA provides procedural and substantive safeguards designed "to ensure that Indian children who must be removed are placed with Indian families, communities and cultures." *Id*. Of particular relevance here are ORICWA's provisions governing TCA and its implementation as a permanency plan in dependency cases. Those include, among other provisions, the TCA statute itself, ORS 419B.656; and an ORICWA statute it references, ORS 419B.612 (best interests of Indian child). We introduce those statutes here but will discuss them in greater detail in our analysis below.

<blockquote>a.   ORS 419.656: "Tribal Customary Adoption"</blockquote>

The TCA statute defines "'tribal customary adoption'" as "the adoption of an Indian child, by and through the tribal custom, traditions or law of the child's tribe, and which may be effected without the termination of parental rights." Or Laws 2021, ch 398, § 65a, *codified as* ORS 419B.656(1). Through ORICWA and its amendments, TCA became an explicitly available option for juvenile courts conducting permanency hearings involving Indian children, at which a court must, after consultation with a child's tribe, determine whether TCA is an appropriate permanent placement if reunification is unsuccessful. ORS 419B.476(2)(e).[2] If, as a result of a permanency hearing, the juvenile court determines that TCA is an appropriate permanent placement for an Indian child and the child's tribe consents to TCA as the plan, the court must ask the tribe to file "a tribal customary adoption order or judgment evidencing that the tribal customary adoption has been completed[,]" after which the court sets a hearing to consider whether it will accept the tribe's filing. ORS 419B.476(7)(d)(A) (procedures court must follow upon determination that plan should be

---

[2] We discuss below the nature of the juvenile court's permanency decision, including the procedural and substantive rights that a parent of an Indian child has at the permanency hearing and the various criteria that must be satisfied before the juvenile court may order TCA as an Indian child's permanent plan.

TCA); ORS 419B.656(3)(a) (stating when juvenile court must "accept an order or judgment for tribal customary adoption that is filed by the Indian child's tribe").

The TCA statute sets forth various requirements for DHS and the child's tribe, and it states criteria for the TCA, its supporting home study, and the juvenile court's acceptance of the tribe's filing. ORS 419B.656. First, the statute states that, if "the juvenile court determines" that TCA is in the child's best interests "as described in ORS 419B.612" and that the child's tribe consents to TCA, DHS must provide a written report regarding the child to the child's tribe and to the proposed adoptive parents. ORS 419B.656(2)(a) (detailing what that report must entail).[3] Second, also subject to the determination of the child's best interests and the tribe's consent, the TCA statute requires the court to accept the tribe's adoptive home study if it includes certain elements and "[u]ses the prevailing social and cultural standards of the Indian child's tribe as the standards for evaluation of the proposed adoptive placement." ORS 419B.656(2) (b). Third, ORS 419B.656(3)(a) states when a juvenile court must accept a tribe's order or judgment evidencing the tribe's completion of a TCA:

> "The juvenile court shall accept an order or judgment for tribal customary adoption that is filed by the Indian child's tribe if:
>
> "(A)   The court determines that tribal customary adoption is an appropriate permanent placement option for the Indian child;
>
> "(B)   The court finds that the tribal customary adoption is in the Indian child's best interests, as described in ORS 419B.612; and
>
> "(C)   The order or judgment:

---

[3] The written report that ORS 419B.656(2)(a) contemplates is not at issue in this case. We note, however, that it is not apparent from the statute *when* the court is to make the underlying determination or DHS is to produce the written report, which, unlike the partly analogous "placement report" generally required in adoption proceedings under ORS 109.276 (petitions for adoption), is not required to be filed with the court. *Compare* ORS 109.276(8)(a)(A) (requiring DHS to file placement report for the consideration of the court hearing the adoption proceedings), *with* ORS 419B.656(2)(a) (providing for service only on child's tribe and proposed adoptive parents).

"(i)   Includes a description of the modification of the legal relationship of the Indian child's parents or Indian custodian and the child, including contact, if any, between the child and the parents or Indian custodian, responsibilities of the parents or Indian custodian and the rights of inheritance of the parents and child;

"(ii)   Includes a description of the Indian child's legal relationship with the tribe; and

"(iii)   Does not include any child support obligation from the Indian child's parents or Indian custodian."

If, at the conclusion of the TCA hearing, the juvenile court accepts the tribe's order or judgment of TCA, the court enters a judgment of adoption and the court's jurisdiction over the Indian child is terminated. ORS 419B.656(4)(d), (f).

Two aspects of ORS 419B.656(3)(a) are central to our discussion: First, ORS 419B.656(3)(a)(A) contemplates a determination whether TCA is an "appropriate permanent placement," a determination also required by the permanency statute, ORS 419B.476; second, ORS 419B.656(3)(a)(B), like the paragraph immediately preceding it, ORS 419B.656(2)(a), again refers to the "Indian child's best interests, as described in ORS 419B.612[.]" We discuss below the "appropriate permanent placement" determination referenced in the TCA statute and its relationship to the same determination under the permanency statute. However, to provide further context for the parties' dispute, we briefly discuss the statute that the TCA statute expressly cross-references: ORS 419B.612.

b.   ORS 419B.612: "Best interests of the Indian child"

As we have just noted, the TCA statute, ORS 419B.656, requires the juvenile court to accept a TCA order or judgment filed by a child's tribe if, in addition to other prerequisites, the court finds that TCA "is in the child's best interests, as described in ORS 419B.612[.]" Neither ORS 419B.612 nor the dependency code as a whole explicitly defines "best interests," despite there being statutorily required "best interests" determinations throughout any dependency proceeding, including one involving Indian children. Rather than defining "best interests," ORS 419B.612

sets out factors that a juvenile court must consider "in consultation with [an] Indian child's tribe" when making a determination regarding the best interests of an Indian child. Those factors include:

"(1)   The protection of the safety, well-being, development and stability of the Indian child;

"(2)   The prevention of unnecessary out-of-home placement of the Indian child;

"(3)   The prioritization of placement of the Indian child in accordance with the placement preferences under ORS 419B.654;

"(4)   The value to the Indian child of establishing, developing or maintaining a political, cultural, social and spiritual relationship with the Indian child's tribe and tribal community; and

"(5)   The importance to the Indian child of the Indian tribe's ability to maintain the tribe's existence and integrity in promotion of the stability and security of Indian children and families."

As we will explain, the issue in this case ultimately reduces to whether—and if so, how—the juvenile court in this case was required *at the time of the TCA hearing* to apply those considerations and make the related findings and determinations under the TCA statute. After next recounting the salient details of the permanency and TCA hearings that took place in this case, we will turn to that issue and the related arguments of the parties and *amici*.

B.   *Permanency Proceedings in this Case*

Mother and her children, S and P, are members of the Pit River Tribe, a federally recognized Indian tribe located in Northern California; thus, once the juvenile court had asserted dependency jurisdiction over S and P, ORICWA applied to their dependency cases. *See* ORS 419B.603(5) (defining "Indian child"). Initially, the permanency plan for both children was reunification with mother, but DHS eventually petitioned to change their plans from reunification to TCA. As described next in more detail, the juvenile court considered DHS's petition in a contested permanency

hearing under ORS 419B.476 and ultimately authorized the proposed change in plan to TCA.

   1.   *Permanency hearing*

      The juvenile court held a permanency hearing over the course of more than two full days in July 2022. DHS and the Pit River Tribe participated in the permanency hearing and presented evidence supporting the proposed change in plan. Among their witnesses was one of the proposed adoptive parents (who is both a tribal member and mother's first cousin), in whose care the children had been temporarily placed. He testified to the progress that the children had made since being placed under his and his wife's care and to their willingness to be a permanent placement for the children.

      The juvenile court heard evidence from DHS that the children's lack of permanency was detrimental to their well-being and that mother had not made changes that would allow them to safely return to her care. DHS also presented evidence that, throughout the pendency of the juvenile case, it had sought to prioritize placing the children with mother and that, when that was no longer a safe option, DHS had prioritized placing the children with mother's relative—the proposed tribal-adoptive parent—whom the tribe had approved as a permanent placement resource pursuant to ORICWA. DHS had also prioritized placing S and P together. According to DHS, the proposed adoptive family had coordinated visits between the children and one of their grandmothers, as well as with their third sibling, J.[4] DHS also presented evidence that S had a speech delay that had gone untreated prior to her temporary placement and that she had needed an Individualized Education Plan (IEP) upon that placement.

      The juvenile court also heard from a tribal expert, England, who had on numerous previous occasions been received as a "qualified expert witness" (QEW) in ICWA and ORICWA cases.[5] *See* ORS 419B.642 (defining "quali-

---

   [4]   J has a different father than S and P and lived with her father.  J is not a party to this case.

   [5]   ICWA is the federal Indian Child Welfare Act, 25 USC §§ 1901 - 1963 (1978), which, like ORICWA, focuses on the rights of Indian children and their parents and is applicable in all juvenile dependency cases involving Indian children.

fied expert witness").[6] England had reviewed the extensive record of the state's involvement with mother and the children. He testified that, in his opinion, DHS had engaged in active efforts throughout the dependency case to reunify the family and that, despite those efforts, the children could not safely return to mother's care. England also testified about what a Pit River tribal customary adoption entailed, including that the tribe required a "culture contract" with the tribal-adoptive family to ensure that the Indian child has opportunities to remain connected to tribal culture.

Finally, the children's proposed adoptive parent testified to how he and his wife had taken the children to Powwows, read them Pit River Tribe books, and planned to have the children participate in tribal dance classes. He also described the progress that S had made with her speech and in school since being placed with them, which he attributed to her speech therapy and IEP.

After the permanency hearing, the juvenile court issued judgments ordering that the children's plans change from reunification to TCA. Although those judgments were the subject of a separate, unsuccessful appeal, *Dept. of Human Services v. M. G. J.*, 326 Or App 426, 532 P3d 905 (2023) (*M. G. J. I*), *rev den*, 371 Or 476, 537 P3d 938 (2023), they included various findings and conclusions that appear relevant to this case as well. First, the court determined that: (1) the tribe had requested and approved both TCA as the new permanency plan and the proposed tribal-adoptive family as the planned placement; (2) DHS had made the efforts required by ORS 419B.192 to place S and P together and with a relative with whom they had a caregiver relationship; and (3) placement in substitute care with the children's adoptive resource was necessary and in the children's best interests.

___

[6] Under ORS 419B.642, a QEW must testify at certain hearings, including one under ORS 419B.340 (determination whether DHS has made "active efforts * * * to prevent or eliminate the need for removal of the ward from the home"); *see also* ORS 419B.645 (defining "active efforts"). Although DHS took the position that it was not *required* to provide QEW testimony for purposes of satisfying its burden of proof at the permanency hearing, it was undisputed that England met the requirements of a QEW and that his testimony relied on his underlying expertise regarding "the prevailing social and cultural standards" of the Pit River Tribe. ORS 419B.642 (contemplating QEW testimony whether continued custody by Indian child's parent "is likely to result in serious emotional or physical damage to the Indian child").

Second, applying the clear and convincing evidence standard applicable in ORICWA cases, the juvenile court made the findings that it was required to make as a predicate to changing the children's plan from reunification to TCA. *See* ORS 419B.476(5)(k) (requiring permanency findings to be supported by clear and convincing evidence in cases involving Indian children). Specifically, the court found that:

(1)  DHS had made active efforts to make it possible for mother's children to safely return home, *see* ORS 419B.476(5)(k)(A);

(2)  Despite those active efforts, continued removal of the children was necessary to prevent serious emotional or physical damage to them, *see* ORS 419B.476(5)(k)(B);

(3)  Mother had not made sufficient progress to make it possible for her children to safely return home, *see* ORS 419B.476(5)(k)(C); and

(4)  The new permanency plan of TCA complied with the placement preferences described in ORS 419B.654, *see* ORS 419B.476(5)(k)(D).

Third, the court found that the termination of mother's parental rights would not be in the children's best interests, both because TCA was an appropriate permanent plan and because the tribe did not agree with terminating mother's parental rights. *See* ORS 419B.498(2)(b)(C) (providing that there exists a compelling reason to forgo termination of parental rights when the juvenile court finds that TCA is an appropriate permanent plan and the tribe consents to that plan).

In addition to ordering the change in plan to TCA, the juvenile court directed the tribe to file its TCA order or judgment within six months of the permanency judgment date. *See* ORS 419B.476(7)(d)(A) ("[T]he court shall request that the tribe file with the court a tribal customary adoption order or judgment evidencing that the tribal customary adoption has been completed.").

Mother appealed the juvenile court's permanency judgments, primarily contending that DHS had not established, by clear and convincing evidence, either that she had

not made sufficient progress for her children to safely return home or that DHS had made active efforts to that end. *M. G. J. I*, 326 Or App at 428. The Court of Appeals affirmed, *id.* at 438, and this court denied mother's petition for review, 371 Or 476.

   2.  *TCA hearing*

   While mother's appeal from the permanency hearing was pending, the children's tribe established and approved a Tribal Customary Adoption Resolution and Agreement (TCA resolution) for the children through the tribe's internal processes. The tribe then filed the TCA resolution in juvenile court, and DHS requested a hearing for the court to accept it. DHS subsequently filed two otherwise identical documents under each child's name: (1) a proposed order accepting the tribe's order or judgment of tribal customary adoption; and (2) a proposed judgment of tribal customary adoption.

   Together, the materials before the juvenile court provided as follows. First, the TCA resolution stated that the Pit River Tribe has the "power to safeguard and promote the * * * general welfare of the Tribe, including the adoption and implementation of Tribal Customary Adoptions," and that the tribe "does not believe in or adhere to termination of parental rights[.]" It further set forth the tribe's determination, "after careful consideration regarding the best interests of the minors' birth mother, adoptive family, and the Tribe, that Tribal Customary Adoption is in the minors' best interest[s,]" after which it identified S and P's proposed "Tribal Customary Adoptive parents."[7]

   Second, DHS's proposed orders accepting the TCA set forth the legal standard for accepting the tribe's resolution under ORS 419B.656(3)(a) and the following findings of fact and conclusions of law:

   •   The tribe supported TCA as the children's permanency plan;

   •   TCA was an appropriate permanent placement for S and P; and

---

   [7]  There is no dispute in this case that the TCA resolution is a qualifying "tribal customary adoption order or judgment evidencing that the tribal customary adoption has been completed" within the meaning of ORS 419B.476(7)(d)(A).

- • TCA was in the children's best interests under ORS 419B.612.

And third, DHS's proposed TCA judgment included, in pertinent part, the following determination:

"The court is satisfied as to the identity and relations of the persons, that the proposed tribal customary adoptive parent(s) are of sufficient ability to bring up the Indian child and furnish suitable nurture and education[,] and the requirements of [ORICWA] have been met."

At the time of its acceptance of the tribe's resolution and resulting entry of judgment at the TCA hearing, the juvenile court had for its consideration the foregoing TCA resolution, proposed order accepting that resolution, and proposed judgment effectuating it, as well as each child's dependency file, including their permanency judgments. With that record for support—though without specifically referencing that record—the juvenile court ultimately accepted the resolution, ordered TCA, and dismissed jurisdiction over both children.[8]

3.  *Mother's appeal and petition for review*

Mother appealed the juvenile court's judgments ordering tribal customary adoption of S and P, raising three arguments: (1) that the juvenile court had erred in accepting the tribe's TCA resolution without making its own best-interests determination; (2) that mother's procedural rights were violated when the court entered TCA judgments transferring her parental rights to the tribal-adoptive parents without providing her a meaningful opportunity to be heard in objection; and (3) that the court had erred in signing an order or judgment filed by DHS rather than by the tribe. The Court of Appeals rejected mother's first two arguments as unpreserved, reasoning that (1) mother had not argued that ORICWA required the juvenile court to make an independent best-interests finding at the TCA hearing or that the finding that the court did make was somehow inadequate, and (2) although mother had raised "generalized concerns" about the court's process, she had

_____

[8] We describe the TCA hearing itself in further detail below, in the context of discussing the parties' contentions regarding whether mother preserved the arguments that she seeks to advance on review.

not sought to introduce testimony or other evidence, nor had she otherwise signaled that she was raising a constitutional challenge. *Dept. of Human Services v. M. G. J.*, 329 Or App 101, 104-105 (2023) (nonprecedential memorandum opinion) (*M. G. J. II*). The court rejected, apparently without deciding, mother's third argument regarding who was required to file the TCA orders and judgments that the court ultimately signed and entered, concluding that any error was harmless. *Id.* at 105-106.[9] We allowed mother's petition for review, which primarily sought to raise the two arguments that the Court of Appeals had held were not preserved.

## II.   DISCUSSION

### A.   *Preservation*

Before reaching the merits of mother's arguments, we must determine whether they are preserved. On review, DHS contends that the Court of Appeals was correct in framing mother's arguments and rejecting them as unpreserved. As discussed below, we view mother's arguments somewhat differently than the Court of Appeals did. As a result, we conclude that mother preserved her arguments that the TCA statute required the juvenile court to make an independent best-interests finding, and that the statute entitled her to an evidentiary hearing at which she could contest the juvenile court's decision to proceed with TCA. To provide context for that conclusion, we first recount aspects of the TCA hearing and the arguments that the parties made at the hearing, together with the juvenile court's observations and responses.

### 1.   *The TCA hearing*

As noted, ORICWA was enacted in 2020, and, at the time of the TCA hearing in this case in 2023, TCA remained a fairly novel permanency option for Oregon courts, as the juvenile court and parties both acknowledged at the

---

[9] Although that matter is not before this court, we note that mother and the Court of Appeals may have conflated the filing with the court of the tribe's order or judgment reflecting completion of a TCA, *see* ORS 419B.476(7)(d)(A) (requiring juvenile court to "request that the tribe file with the court a tribal customary adoption order or judgment evidencing that the tribal customary adoption has been completed"), with the filing of an order and judgment approving the tribe's filing and entering TCA, *see* ORS 419B.656(3)(a) (providing for juvenile court's *acceptance* of the tribe's order or judgment and entry of the court's own judgment of adoption). But, as noted, we need not address that issue.

hearing.[10] Thus, throughout the hearing, the parties and the court discussed the TCA statute (ORS 419B.656) at some length, including what that statute required and whether it had been complied with. During those discussions, the juvenile court observed that the statute was "not a model of clarity" and invited the parties to state their positions as to what process was required.

DHS maintained that a TCA hearing is "ministerial" in nature and that, given the filing of the tribe's TCA resolution, the court could simply sign both the proposed order and proposed judgment, thereby finalizing the TCA, dismissing the parties, and terminating the court's jurisdiction over the children. The tribe agreed, confirming its satisfaction with DHS's description of the applicable process, including DHS's characterization of TCA hearings as being ministerial in nature and limited to domesticating the tribe's TCA order or judgment as a foreign judgment.[11]

For her part, mother made three objections. First, she expressed concern about the TCA resolution because it made no accommodations for visitation between S and P and their sibling J. Mother therefore objected to the court accepting the TCA resolution. Second, mother represented that she had made progress towards ameliorating certain bases for dependency jurisdiction and that, for that reason, proceeding with TCA as the permanency plan was no longer appropriate. Third, in regard to the TCA statute, mother argued that the TCA hearing should not just be a "rubber[-]stamp hearing" and that "there should be some more testimony and at least mention and inclusion of the home study."

In response, DHS pointed out that ORS 419B.656 did not require the TCA resolution to address sibling contact; in DHS's view, "[w]hat this agreement encompasses is what is required by the statute." DHS also observed that, because mother's parental rights were not being terminated, she could petition the tribe to modify its terms if she had concerns regarding its provisions. DHS asserted

_____

[10] From the exchanges at that hearing, it was apparent that the TCA at issue in this case was the first to come before the juvenile court in that county.

[11] Once it has been accepted by a juvenile court, a tribal customary adoption order or judgment is entitled to "full faith and credit." ORS 419B.656(3)(b).

that the juvenile court was "directed by the [TCA statute] to accept the tribal customary adoption and finalize this adoption[,]" essentially rebutting mother's contention that the proceedings were required to be more than a "rubber[-]stamp hearing."

Finally, counsel for the children weighed in, agreeing with DHS and the tribe's position that ORS 419B.656 had been complied with and adding, on the children's behalf, that proceeding with TCA was in the children's best interests.

After hearing the parties' positions, the juvenile court stated that it was satisfied that ORS 419B.656 had "been either fully or substantially complied with," that the proposed order accepting the resolution and the proposed judgment effectuating TCA also satisfied that statute, and that the court would adopt the findings contained in both documents. The court then signed those filings, thereby dismissing the parties and terminating its jurisdiction over both children.

To summarize, both DHS and the tribe asserted that the TCA hearing was meant to be "ministerial" in nature. The juvenile court raised concerns about the statute's requirements, then invited any arguments about statutory compliance from the parties. Within that context, mother made three arguments objecting to the juvenile court's acceptance of the TCA resolution, including that the statute required more process than just a "rubber[-]stamp hearing." With that context in mind, we turn to mother's appeal and the Court of Appeals' conclusion that the challenges now on review were unpreserved.

2. *Whether mother preserved the arguments she sought to appeal*

On appeal, mother raised a single assignment of error as to each of the juvenile court's two judgments implementing TCA, making three, identical arguments as to S and P. Mother first argued that ORS 419B.656(3)(a)(B) required the juvenile court to make its own determination that TCA was in each child's best interests—a determination that, according to mother, required the court to consider the

concerns she had raised during the TCA hearing, including that the TCA resolution did not provide for maintaining the children's relationships with their sibling J and that mother had made progress towards ameliorating the jurisdictional bases.

Mother also argued—in support of her assertion that the juvenile court had erred in accepting the TCA resolution—that, because "[a] parent's due process rights are always implicated in the construction and application of the provisions of the juvenile code[,]" it follows that "ORS 419B.656 necessarily must afford a parent some meaningful process before a juvenile court can modify or transfer to another her parental rights." Here, mother contended, "the juvenile court [had] entered judgments finalizing [TCA] over [her] objection at a 'ministerial' hearing that did nothing more than rubber[]stamp out-of-court actions" without taking any evidence or giving her a chance to challenge the tribe's TCA resolution.[12]

DHS argued in response that both mother's best-interests challenge and her procedural argument were unpreserved. The Court of Appeals agreed. *M. G. J. II*, 329 Or App at 103. The court concluded that mother's first challenge was unpreserved because mother had never specifically contended that ORS 419B.656(3)(a)(B) required the juvenile court to make a best-interests finding at the TCA hearing. *Id.* at 104. And, characterizing mother's second challenge as a constitutional due process argument, the court concluded that mother had likewise failed to preserve that issue. *Id.*

We conclude that mother's arguments in the juvenile court were adequate to preserve both those issues for appeal, even though, as we explain later in this opinion, mother did not preserve all the issues that she seeks to raise in this court. Starting with whether ORS 419B.656(3)(a)(B) requires a juvenile court to make a best-interests finding at the time of a TCA hearing, we acknowledge that mother did not expressly reference that finding or contend that, because

---

[12] As previously noted, mother raised a third argument regarding who was responsible for filing the order or judgment that the trial court ultimately signed, but mother does not reprise that argument on review.

of alleged defects in the TCA resolution or any other reason, the record was insufficient to support such a finding. As the juvenile court recognized, however, the requirements of ORS 419B.656 were in dispute, and the court sought the parties' assistance in determining what those requirements were. Under those circumstances, mother's contention that the court was required to consider "more testimony" and not simply "rubber[]stamp" the tribe's TCA resolution was sufficient to focus the attention of the court and the other parties on the requirements of the TCA statute, including the findings provision of ORS 419B.656(3)(a)(B). That is, the court understood that it needed to determine its obligations under the TCA statute as a prelude to its assessment of the tribe's resolution, and the parties' respective arguments gave the court the opportunity to carefully consider those requirements and apply the statute accordingly. *See State v. Skotland*, 372 Or 319, 326, 549 P3d 534 (2024) ("At its heart, preservation is a doctrine rooted in practicality, not technicality. Preservation serves a number of policy purposes, but chief among them is fairness and efficiency—affording both opposing parties and trial courts a meaningful opportunity to engage an argument on its merits and avoid error at the outset."); *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) ("Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal."). Thus, we conclude that mother preserved the argument that the juvenile court was required to make an independent best-interests finding at the TCA hearing, not merely adopt the tribal resolution containing that finding.

For very similar reasons, we also conclude that mother preserved her argument that the TCA statute entitled her to an evidentiary hearing at which she could contest the juvenile court's decision to move forward with TCA and transfer her parental rights in accordance with the tribe's resolution. We disagree with the Court of Appeals' rationale that, because mother's procedural argument is effectively a constitutional due process challenge that she did not raise in the juvenile court, that issue is unpreserved. *See M. G. J. II,* 329 Or App at 105 (also noting that mother had not

sought to introduce testimony or other evidence at the TCA hearing). That is not to say that we understand mother to have raised a standalone due process challenge in the juvenile court; our point is that, because that was not, in fact, the argument that mother made in the Court of Appeals, there was no need to have raised that issue in the juvenile court. Mother's argument was that the Court of Appeals was required to construe the TCA statute in a manner that protected her constitutional rights with regard to parenting. *See* ORS 419B.090(4) (courts must interpret and apply provisions of ORS chapter 419B in accordance with constitutional rights that United States Supreme Court has recognized on behalf of parents). That was a statutory interpretation argument, not a freestanding constitutional argument. And by arguing in the juvenile court that the TCA statute required the court to provide her with a meaningful opportunity to challenge the TCA decision—through such things as testimony and cross-examination, introduction of (and perhaps challenges to) the tribe's adoptive home study, and presumably mother's evidence of her progress in addressing her parental deficits—mother had likewise argued what the *statute* required, and not what the constitution would require if the statute did not. Thus, we conclude that mother preserved her argument that, under the TCA statute, the juvenile court was required to do more than simply determine whether, as a "ministerial" matter, the TCA resolution that the tribe had filed complied with the TCA statute. We proceed to consider that argument, together with mother's more specific argument regarding the best-interests finding.

## B.  *Analysis*

As we understand the parties' arguments, there appears to be no dispute that, before accepting a tribal order or judgment of TCA for an Indian child, a juvenile court must make certain determinations that the TCA statute identifies, including (1) a determination that TCA "is an appropriate permanent placement option" for the child, and (2) a finding that TCA is in the "child's best interests, as described in ORS 419B.612." ORS 419B.656(3)(a)(A), (B). What *is* at issue, however, is *when* and *how* those determinations were to be made, and particularly whether the TCA

statute requires a court to undertake those considerations and make the related findings *at the time of the TCA hearing.* Ultimately, the issue on review reduces to this: Is a juvenile court required to conduct a contested evidentiary hearing after a tribe submits a completed TCA at which the court determines whether (1) TCA remains an appropriate permanent placement for the Indian child in question; and (2) TCA is in the child's best interests within the meaning of ORS 419B.612? As we will explain, we conclude that the answer to that question is no: A juvenile court is not required to conduct a contested evidentiary hearing to make those determinations after a tribe, at the court's request, has filed an order or judgment demonstrating that a TCA has been completed.

    1.   *The parties' arguments*

       Mother's core argument is that, at a TCA hearing, the juvenile court must: receive evidence and challenges to it; independently find whether TCA is in an Indian child's best interests; and determine, following a contested proceeding, whether to effectuate TCA. Mother bases her argument on ORS 419B.656(3)(a), which we set out in full for convenience and which states when a juvenile court must accept a tribal order or judgment reflecting the completion of TCA:

    "The juvenile court shall accept an order or judgment for tribal customary adoption that is filed by the Indian child's tribe if:

    "(A)   The court determines that tribal customary adoption is an appropriate permanent placement option for the Indian child;

    "(B)   The court finds that the tribal customary adoption is in the Indian child's best interests, as described in ORS 419B.612; and

    "(C)   The order or judgment:

    "(i)   Includes a description of the modification of the legal relationship of the Indian child's parents or Indian custodian and the child, including contact, if any, between the child and the parents or Indian custodian, responsibilities of the parents or Indian custodian and the rights of inheritance of the parents and child;

     "(ii)   Includes a description of the Indian child's legal relationship with the tribe; and

     "(iii)   Does not include any child support obligation from the Indian child's parents or Indian custodian."[13]

Mother acknowledges that ORS 419B.656 is silent as to the procedural and substantive protections to which an objecting parent is entitled before the court may order TCA. She notes, however, that the text of ORS 419B.656(3)(a)(A) expressly contemplates a best-interests finding by "[t]he court," which in her view precludes a juvenile court from simply adopting a tribe's finding that TCA is in a child's best interests. Additionally, mother contends that we must interpret the TCA statute so as to protect her due process rights, which (given her understanding that the TCA effectively terminated her parental rights) required the court to conduct a contested, evidentiary TCA hearing. *See* ORS 419B.090(4).

        Respondents[14] disagree, noting that, in signing the TCA orders submitted by the DHS, the juvenile court expressly made the best-interests findings that mother contends it was required to make. As to mother's procedural argument, respondents contend that ORS 419B.656(3)(a) allows a juvenile court to make the determinations that it requires by relying on the information provided by an Indian child's tribe or contained in the case record. Although respondents agree that the court may also consider any evidence proffered by the parties at the TCA hearing, they argue that the court is not required to conduct a formal, evidentiary hearing at that stage. Moreover, respondents argue that the provisions of ORS 419B.656(3)(a) are not intended to provide parents of an Indian child the opportunity to relitigate whether there are grounds for TCA. That determination, they argue, is made at the permanency stage, when the juvenile court holds a contested evidentiary hearing subject to a clear-and-convincing evidence standard

---

[13] Although mother does not separately contend that she was entitled to an evidentiary hearing to determine whether the tribal resolution contained the components required by ORS 419B.656(3)(a)(C), we include that provision here for completeness.

[14] Respondents include DHS, the Pit River Tribe, and children. Unless otherwise indicated, references in this opinion to "respondents" encompass all three parties.

and, in consultation with the tribe, determines whether TCA is an appropriate permanent placement. Respondents further argue that subjecting a tribe's statutorily compliant TCA order or judgment to an evidentiary challenge would fail to respect the tribe's sovereignty and fail to extend full faith and credit to tribal decisions, as respondents contend is required by ORS 419B.656(3)(b) (requiring court to "afford full faith and credit to a [TCA] order or judgment that is accepted" under ORS 419B.656(3)). Finally, respondents argue that, in all events, the evidence available to the juvenile court at the TCA hearing was sufficient to support its decision to accept the tribe's TCA resolution and implement TCA.

2.  *The intended meaning ORS 419B.656(3)(a)*

The parties' arguments regarding the inquiry and process required by ORS 419B.656(3)(a) implicate two subparagraphs, specifically ORS 419B.656(3)(a)(A) and (B). As noted, those provisions require the juvenile court to accept "an order or judgment for tribal customary adoption that is filed by the Indian child's tribe" if

"(A)   The court determines that tribal customary adoption is an appropriate permanent placement option for the Indian child; and

"(B)   The court finds that the tribal customary adoption is in the Indian child's best interests, as described in ORS 419B.612[.]"

Whether those provisions require the juvenile court to make evidence-based decisions at the time of the TCA hearing presents a question of statutory interpretation, which we resolve by employing the established analytical framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and modified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Under that framework, we examine the relevant text and context, together with any legislative history that we may find helpful, all with the ultimate goal of determining the legislature's intent. *Gaines*, 346 Or at 171-72.

Before looking more closely at the determinations required under ORS 419B.656(3)(a)(A) and (B), we find it helpful to first place those inquiries in context with the larger

permanency process of which they are a part. *See Dept. of Human Services v. S. J. M.*, 364 Or 37, 50-51, 430 P3d 1021 (2018) ("Before interpreting the statutes at issue, it is helpful to place the permanency decisions at issue here in context."); *see also Dept. of Human Services v. Y. B.*, 372 Or 133, 144, 546 P3d 255 (2024) (same). As discussed above, by the time a TCA hearing takes place under ORS 419B.656, the juvenile court will have already held a permanency hearing pursuant to ORS 419B.476 and, with the consent of the tribe, determined that TCA is an appropriate permanent placement for the Indian child in question. ___ Or at ___ (discussing ORS 419B.476(7)(d)(A)) (slip op at 4:9 - 5:3). It will then have asked the tribe to proceed with a TCA and file an order or judgment with the court evidencing that one has been completed. *Id*. (slip op at 5). With that temporal and procedural relationship between permanency hearings and TCA hearings in mind, we turn to the text and context of the TCA statute.

> a.   ORS 419B.656(3)(a)(A) and appropriate permanent placement

>> (1)   Text

Under ORS 419B.656(3)(a)(A), "[t]he juvenile court shall accept an order or judgment for tribal customary adoption that is filed by the Indian child's tribe if" "[t]he court *determines* that tribal customary adoption is an appropriate permanent placement option for the Indian child[.]" (Emphasis added.) Although ORS 419B.656(3)(a)(A) conditions acceptance of a tribe's order or judgment for TCA on, among other things, a determination that TCA is an appropriate permanent placement for the child in question, that provision offers little guidance as to when that determination must be made and even less guidance as to how the juvenile court must make it. That is, the statute *could* be read as requiring the juvenile court to make that determination contemporaneously with, or at least immediately before, its decision to accept an order or judgment for TCA. But that is not the only plausible reading, and the legislature may not have meant to require that determination to be made at the TCA hearing, given that the TCA hearing is the consequence of the juvenile court making the identical determination at the permanency hearing that directly preceded it. And as for

what process the court must follow in making that determination—including whether parents are entitled to an evidentiary TCA hearing or, instead, the juvenile court can base that determination on the existing record or perhaps make it as a matter of law—the text appears to be silent.

We turn to whether something in the word "determines" itself suggests a particular form of inquiry, whether one that occurs at the TCA hearing or at another time. Neither ORICWA nor the juvenile code as a whole defines "determines," so we start with that term's plain meaning. *See DCBS v. Muliro*, 359 Or 736, 745-46, 380 P3d 270 (2016) ("When the legislature has not defined a word or a phrase, we assume, at least initially, that the word or phrase has its 'plain, natural, and ordinary' meaning." (Quoting *PGE*, 314 Or at 611)). The relevant definitions of "determines" include "to come to a decision concerning as the result of investigation or reasoning," as well as simply to "decide by judicial sentence." *Webster's Third New Int'l Dictionary* 616 (unabridged ed 2002); *see also Black's Law Dictionary* 564 (11th ed 2019) (defining "determination" to mean "[t]he act of deciding something officially; esp., a final decision by a court or administrative agency"). Those definitions suggest thoughtful and measured decision making, but they do not indicate whether a determination under ORS 419B.656(3)(a)(A) requires the juvenile court to come to its decision through a specific process, whether it be a contested hearing, a review of evidence in the record, an examination of the case file, or something else, nor do they indicate when the court must make that decision. Here, however, the statutory context provides considerable assistance. *See State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) ("In construing statutes, we do not simply consult dictionaries and interpret words in a vacuum."); *see also State v. Fries*, 344 Or 541, 546-48, 185 P3d 453 (2008) (context determines which of multiple definitions is the one the legislature likely intended). We turn to that context.

(2)   Context

We have already generally described the procedural context in which a juvenile court decides whether to accept a TCA order or judgment. In this case, that procedural context also provides the relevant statutory context for our *Gaines*

analysis. *See State v. McNally*, 361 Or 314, 325, 392 P3d 721 (2017) (a statute's interpretive context includes other related statutes). And here that context strongly suggests that the legislature did not intend for a juvenile court to hold a contested evidentiary hearing at the TCA stage to determine whether TCA is an appropriate permanent placement.

As discussed, a TCA hearing does not occur in isolation. It is not even scheduled until there has been a permanency hearing under ORS 419B.476 and the juvenile court has "determine[d]" at *that* hearing that TCA is an "appropriate permanent placement" for an Indian child. ORS 419B.476(7)(d)(A).[15]

As with other permanency decisions that a juvenile court may make, a parent or other party who opposes changing a child's permanency plan from reunification to TCA is entitled to a contested permanency hearing. *See* ORS 419B.476(1) (hearings must comply with, among other statutes, ORS 419B.310); ORS 419B.310 (requiring evidentiary hearing and stating applicable burdens of proof). Specifically, to justify changing an Indian child's permanency plan to TCA, a juvenile court must make the following determinations, all of which must be established by clear and convincing evidence: (1) that DHS made active efforts to make it possible for the Indian child to safely return home, ORS 419B.476(5)(k)(A); (2) that, despite those active efforts, continued removal of the child is necessary to prevent serious emotional or physical damage to the child, ORS 419B.476(5)(k)(B); (3) that the child's parent has not made sufficient progress for the child to safely return home, ORS 419B.476(5)(k)(C); and (4) that the new permanency plan complies with ORICWA's placement preferences for Indian children, ORS 419B.476(5)(k)(D). For a juvenile court conducting permanency proceedings, the Indian child's health and safety take precedence over all other concerns. ORS

---

[15] ORS 419B.476(7)(d)(A) provides:

"(d)(A) If the court determines that tribal customary adoption, as described in ORS 419B.656, is an appropriate permanent placement for the child, and the Indian child's tribe consents, the court shall request that the tribe file with the court a tribal customary adoption order or judgment evidencing that the tribal customary adoption has been completed. The tribe must file the tribal customary adoption order or judgment no less than 20 days prior to the date set by the court for hearing."

419B.476(2)(a), (4)(a) (in making determinations at a perma-
nency hearing, the court must "consider the ward's health
and safety the paramount concerns").

An Indian child's tribe is entitled to participate in
permanency hearings involving the child. ORS 419B.473
(requiring that notice of permanency hearing be provided
to parties listed in ORS 419B.470); ORS 419B.470(6) (listing
tribal court as party entitled to request a permanency hear-
ing). If, as a result of a permanency hearing, the juvenile
court determines that TCA is an appropriate permanent
placement for an Indian child and the child's tribe consents
to TCA as the child's plan, the court must request that the
tribe file "a tribal customary adoption order or judgment
evidencing that the tribal customary adoption has been
completed." ORS 419B.476(7)(d)(A). The child's tribe must
then file its documentation no less than 20 days prior to the
date set by the court for a hearing unless the tribe obtains
an extension of up to 60 days. ORS 419B.476(7)(d)(A), (B).
Finally, if the child's tribe does not timely file a tribal order
or judgment reflecting completion of a TCA, the court must
set a new permanency hearing to redetermine the best per-
manency plan for the child. ORS 419B.476(7)(d)(C).

Several things about this statutory context support
the view that ORS 419B.656(3)(a)(A) does not contemplate a
contested evidentiary proceeding at the TCA hearing. One
is that, in the permanency statute, the requirement that the
juvenile court determine whether TCA is an appropriate per-
manent placement is accompanied by explicit requirements
that the court conduct an evidentiary hearing, that DHS
be held to a specific burden of proof, and that the proposed
change of plan meet various criteria. *See* ORS 419B.476(1)
(subjecting permanency hearings to the hearing require-
ments of ORS 419B.310, including requirement that DHS's
contentions be supported by clear and convincing evidence);
ORS 419B.476(5)(k)(D) (requiring determination, also by
clear and convincing evidence, that circumstances warrant-
ing a change of plan are present and that new permanency
plan complies with the ORICWA's placement preferences
under ORS 419B.654); ORS 419B.476(7)(d)(A) (determi-
nation, at contested permanency hearing, that TCA is an

appropriate permanency placement; requirement that the juvenile court consult with the Indian child's tribe about the proposed placement). The TCA statute, on the other hand, has none of those features. Absent other indications of the legislature's intent, we are hesitant to interpret the TCA statute as implicitly imposing comparable requirements when a closely related statute does so explicitly.

Another notable aspect is that there are no required intervening steps between the permanency hearing—where the juvenile court will have determined, under ORS 419B.476(7)(d)(A), that TCA is an appropriate permanent placement—and the TCA hearing—which appears to contemplate the same determination. Thus, in most instances, requiring the juvenile court to make that determination at the TCA hearing would require the court to do the same thing twice in succession, with potentially little time in between.[16] That is, if the juvenile court "determines" at the TCA hearing whether TCA "is an appropriate permanent placement option" under ORS 419B.656(3)(a)(A), it does so at a hearing that directly follows another hearing where the juvenile court has made the same determination and, in doing so, conducted an evidentiary hearing that closely resembles the process that mother contends that the TCA statute requires.

It appears unlikely to us that, in enacting TCA as a permanency option for Indian children, subject to the stringent requirements of the permanency statute, the legislature intended to require DHS to establish grounds for TCA as a permanency plan twice in that way. That is, given that a predicate for considering a tribe's TCA order or judgment under the TCA statute is that DHS have established, under the permanency statute, that TCA, "as described in" the TCA statute, is an "appropriate permanent placement" for an Indian child, we see no reason for the legislature to have intended to subject that inquiry to an evidentiary dispute in

---

[16]  Although here the juvenile court scheduled the TCA hearing six months after the permanency hearing at which it changed the children's permanency plans to TCA, there in nothing in the statutes to preclude a court from scheduling the TCA hearing much closer in time to the permanency hearing, subject only to the need to give the tribe sufficient time to file an order or judgment reflecting a TCA at least 20 days before the TCA hearing.  ORS 419B.476(7)(d)(A).

the TCA hearing that followed. Nor, as respondents observe, does it appear likely that the legislature would have meant to allow parents to essentially relitigate the juvenile court's permanency decision, particularly given the concerns of timeliness and the safety and wellbeing of their children.[17]

The final notable aspect of this part of the statutory context is that, as the above discussion suggests, the permanency provisions of ORS 419B.476 and the TCA provisions of ORS 419B.656 appear designed to complement—not duplicate—each other. To illustrate that point, it is helpful to show how the permanency statute's TCA procedures are comparable to—and substantially as protective as—the procedures that a juvenile court must follow before implementing two other permanency options: adoption and guardianship. As with TCA for Indian children, the permanency statute permits the juvenile court to determine that a child's permanency plan should be adoption or legal guardianship if reunification ceases to be a viable option. ORS 419B.476(5)(d) (adoption); ORS 419B.476(5)(e) (legal guardianship). Unlike for TCA, however, the permanency statute does not provide a procedural mechanism requiring DHS or another petitioner to establish—or enabling a parent to challenge—the basis for determining that legal guardianship or adoption is an appropriate permanent placement for a child. Rather, each of those other determinations is reliant on other statutes to provide the requisite procedures and related burdens of proof.

For example, once a juvenile court determines at a permanency hearing that a child's plan should change to legal guardianship, a petitioner seeking to become the child's guardian must file a motion to establish guardianship. ORS 419B.366(1) (providing for motion); ORS 419B.366(6) (authorizing court to grant motion if (1) juvenile court has approved a plan of guardianship under permanency statute,

---

[17] That is not to suggest that the juvenile court's permanency decision cannot be challenged, simply because the court has asked a child's tribe to proceed with TCA. As in this case, a parent may directly appeal a permanency decision. ORS 419B.476(8). Alternatively -- or additionally -- a parent who believes that the grounds for the juvenile court's permanency decision have sufficiently changed to warrant a change of plan presumably may request a new permanency hearing. *See* ORS 419B.470(6) (requiring juvenile court to hold a permanency hearing upon request of any party). Mother did not request a new permanency hearing in this case.

and (2) the court determines, "after a hearing," that various statutory requirements are met). At the hearing on a petitioner's motion, the petitioner must establish, by a preponderance of the evidence, that (a) "the ward cannot safely return to a parent within a reasonable time"; (b) "[a]doption is not an appropriate plan for the ward"; (c) "[t]he proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian"; and (d) "[g]uardianship is in the ward's best interests." ORS 419B.366(6); *see* ORS 419B.366(2) (burden of proof).

Similarly, before a child may ultimately be freed for adoption as contemplated under ORS 419B.476(6), a parent is entitled to various procedural and substantive protections not provided for by the permanency statute itself but required by other statutes governing the termination of parental rights (TPR). Those include, among other things, the requirement that DHS not file a petition to terminate parental rights until a juvenile court has decided that the child's plan should be adoption, ORS 419B.498(3); that there be no "compelling reason[s]" in the record to forgo filing a TPR petition, ORS 419B.498(2)[18]; that DHS prove, by clear and convincing evidence, grounds to terminate parental rights, ORS 419B.502 - ORS 419B.510 (grounds for termination); ORS 419B.521 (requiring proof of factual basis for termination by clear and convincing evidence for non-Indian children); and that, in addition to proving that a basis exists to terminate parental rights, DHS establish that the termination of a parent's rights is in the best interests of their child, ORS 419B.500.

Each of those three permanency options—TCA, legal guardianship, and adoption—is a choice made available to juvenile courts at the permanency stage, and all three require contested evidentiary hearings subject to specific statutory criteria and specified burdens of proof before the court makes its final permanency decision. That is, each path gives parents the type of hearing and opportunity

---

[18] We note that one legislatively recognized "compelling reason" for finding that filing a TPR petition is not in a child's best interests is if the child is an Indian child and "the court finds that tribal customary adoption, as described in ORS 419B.656, is an appropriate permanent plan for the child and the Indian child's tribe consents to the tribal customary adoption[.]" ORS 419B.498(2)(b)(C). We discuss the potential significance of that provision below when addressing the TCA statute's best-interests provisions.

to challenge the evidence that mother contends the TCA statute requires. But, unlike for adoptions and guardianships, the permanency statute itself provides parents with a contested evidentiary hearing for purposes of challenging whether TCA should be the permanency plan that a juvenile court ultimately accepts, and there is no need for a separate evidentiary hearing to allow for such a challenge. Thus, it is not, as mother seems to suggest, that the legislature must have intended to provide that process in the TCA statute so as not to deprive parents of an opportunity to which they are entitled; the legislature provided for that opportunity through ORS 419B.476(5)(k), where it imposed the procedural requirements and statutory criteria that govern the selection of TCA as the permanent plan.

We find separate contextual support for the view that the TCA statute does not provide a chance to essentially relitigate the juvenile court's permanency decision in two other ORICWA provisions, ORS 419B.600 and ORS 419B.090(6), which emphasize the importance of tribal sovereignty and the role that the tribes play in determining the placement of Indian children. The first provision, ORS 419B.600, states the following regarding ORICWA's new provisions:

> "The Legislative Assembly finds that the United States Congress recognizes the special legal status of Indian tribes and their members. It is the policy of the State of Oregon to protect the health and safety of Indian children and the stability and security of Indian tribes and families by promoting practices designed to prevent the removal of Indian children from their families and, if removal is necessary and lawful, to prioritize the placement of an Indian child with the Indian child's extended family and tribal community. *The state recognizes the inherent jurisdiction of Indian tribes to make decisions regarding the custody of Indian children.* \*\*\* ORS 419B.600 to 419B.654 create additional safeguards for Indian children to address disproportionate rates of removal, to improve the treatment of and services provided to Indian children and Indian families in the child welfare system and to ensure that Indian children who must be removed are placed with Indian families, communities and cultures."

(Emphasis added.) The second, ORS 419B.090(6), takes the policy set forth in ORS 419B.600 and applies it to the changes in existing law that ORICWA made:

> "It is the policy of the State of Oregon, in a case involving an Indian child, to safeguard and promote the Indian child's connections with the Indian child's family, culture and tribe in accordance with the policies regarding Indian children in child custody proceedings under ORS 419B.600."

Together, those two statements establish a policy strongly supportive of tribal sovereignty and tribal self-determination, particularly with regard to matters concerning tribal families, communities and culture and the importance of maintaining an Indian child's role in, and connection to, those core tribal concerns.[19] Moreover, they reflect the legislature's recognition that tribes should take a principal role when it comes to determining issues of custody regarding Indian children, and that the tribes and their decisions are entitled to dignity and respect. *See* ORS 419B.600 ("recogniz[ing] the inherent jurisdiction of Indian tribes to make decisions regarding the custody of Indian children"). *See also* ORS 419B.627(1) (providing, in most instances, for juvenile court's jurisdiction over Indian child to be concurrent with that of Indian child's tribe).

Mother's view that TCA hearings provide an opportunity to contest the juvenile court's permanency-hearing determination that TCA is an appropriate permanent placement for an Indian child is inconsistent with the legislature's commitment to tribal dignity and authority with regard to tribal matters. If mother were correct, then, after the juvenile court determined, with the involvement and consent of the tribe, that TCA was an appropriate permanent placement, and after the tribe, at the request of the juvenile court, undertook the TCA process and returned to the court with an order or document reflecting that undertaking, the court could simply unravel the entire process by changing its mind, based on an essentially ad hoc rehearing of the issues thoroughly litigated at the permanency hearing. That figurative "pulling

---

[19] Most of ORICWA, including what is now ORS 419B.600 and ORS 419B.090(4), was adopted in 2020. Or Laws 2020, ch 14, § 1, § 25 (Spec Sess 1). ORS 419B.656 was added to ORICWA in 2021 by Senate Bill 562, which further amended the permanency statute, ORS 419B.476, to account for TCA. Or Laws 2021, ch 398, § 65.

of the rug from under the tribe's feet" at the TCA hearing is not consistent with treating the tribes as essentially equal partners concerning the custody of Indian children, at least those children for whom reunification with a parent has been adjudicated to no longer be reasonably possible. Again, we are hesitant to construe the TCA statute to permit that outcome.

Mother's principal argument in support of a different understanding of the TCA statute relies on another statute, ORS 419B.090(4), which, as discussed above, requires courts to construe and apply the dependency code in accordance with established United States Supreme Court precedent regarding the constitutional rights of parents. We understand mother to argue that, because the tribal resolution effectively terminated her parental rights, the TCA statute must be construed to provide her with the rights guaranteed a parent facing a termination trial. But mother's premise is flawed. Even if ORS 419B.090(4) might require us to construe a statute that terminates parental rights as including certain procedural protections, that statute does not advance mother's position here. The TCA statute explicitly recognizes that TCA may be accomplished *without* terminating a parent's rights, as the tribal resolution and the juvenile court's judgment expressly purported to do here. And, because the legislature would therefore not have understood a TCA hearing to result in a termination of parental rights, there is no reason that the legislature would have intended to make the procedural protections applicable to a TPR proceeding part of a TCA hearing under ORS 419B.656 if such protections were not constitutionally required. Further, because mother makes no persuasive argument that a statutory proceeding that expressly does *not* terminate parental rights is in fact entitled to the same constitutional protections as TPR, we do not view ORS 419B.090(4) as requiring a TCA hearing to provide such protections. Finally, because, as also noted in our preservation discussion, mother did not make a freestanding constitutional argument that she was entitled to a contested evidentiary hearing even if TCA was not the equivalent of TPR, we do not consider that potential argument further.[20]

_____

[20] For essentially the same reasons, we do not consider mother's argument on review that, as in TPR proceedings, the juvenile court in this case was required to base its TCA-related findings on evidence sufficient to meet the standard

Based on the foregoing considerations, we are persuaded that the determination that ORS 419B.656(3)(a)(A) describes does not provide parents with an opportunity to relitigate whether, in fact, TCA is an appropriate permanent placement for an Indian child, as mother's argument for a contested evidentiary hearing would allow.[21] The substantive determination that TCA is an appropriate permanent placement is made at the permanency hearing and is the product of a contested evidentiary hearing subject to heightened burdens of proof and predicate findings, including that TCA complies with the placement preferences of ORS 419B.654. To the extent that the TCA statute requires a determination, *at the time of the TCA hearing*, that TCA is an appropriate permanent placement, we understand the juvenile court's obligation to be, at most, that it confirm that such a determination has been made and that the TCA, as evidenced by the tribe's order or judgment, is in accordance with the TCA envisioned at the permanency stage. That determination can readily be based upon the record before the juvenile court at that time, including but not limited to the TCA resolution, any additional materials (including the home study) submitted pursuant to the TCA statute, the children's case files, and their corresponding permanency judgments. It does not, however, require a contested evidentiary hearing for the juvenile court to again determine whether TCA is an appropriate permanent placement, and the juvenile court did not err in denying mother that opportunity at the TCA hearing that it held.

### b.  ORS 419B.656(3)(a)(B) and best interests under ORS 419B.612

We turn to whether and, if so, how the juvenile court was required to make a best-interests finding under ORS 419B.656(3)(a)(B) at the time of the TCA hearing. We have just finished explaining that the juvenile court was not required to conduct a contested evidentiary hearing at that time for purposes of determining whether TCA was an

---

of beyond a reasonable doubt applicable to the termination of parental rights regarding Indian children.

[21] We have reviewed ORICWA's legislative history, but we have not found anything in that history to be helpful in addressing whether the TCA statute was intended to provide for a contested evidentiary hearing.

appropriate permanent placement. Some of the same reasons provided above would likewise support the conclusion that such a hearing was not required by ORS 419B.656(3) (a)(B), and we do not recount those here. We recognize, however, that, unlike the TCA statute's provision related to whether TCA is an appropriate permanent placement, the best-interests finding that ORS 419B.656(3)(a)(B) contemplates does not correspond directly to a finding that the juvenile court makes at the permanency hearing or at another stage. We also acknowledge mother's specific argument that the TCA statute required the juvenile court to independently find whether TCA was in her children's best interests rather than relying on the best-interests finding that the tribe made in the TCA resolution. Considering those points, we conclude that, although ORS 419B.656(3) (a)(B) does not permit a juvenile court to wholly defer to a tribe's best-interests finding, that provision does not require a factual inquiry by the court to determine whether a completed TCA is in the best interests of an Indian child "as described in ORS 419B.612." Further, because the juvenile court in this case expressly made that finding in signing the orders submitted by DHS, and mother has not argued that the record was insufficient to support that finding, we conclude that the Court of Appeals did not err in affirming the judgments incorporating those orders.

As set out above, ORS 419B.656(3)(a)(B) requires a juvenile court to accept an order or judgment evidencing a tribe's completion of TCA when, in addition to other requirements, "[t]he court finds that the tribal customary adoption is in the Indian child's best interests, as described in ORS 419B.612[.]" And, as noted, the cross-referenced statute, ORS 419B.612, states,

"when making a determination regarding the best interests of [an Indian] child ***, the court shall, in consultation with the Indian child's tribe, consider the following:

"(1)   The protection of the safety, well-being, development and stability of the Indian child;

"(2)   The prevention of unnecessary out-of-home placement of the Indian child;

"(3)   The prioritization of placement of the Indian child in accordance with the placement preferences under ORS 419B.654;

"(4)   The value to the Indian child of establishing, developing or maintaining a political, cultural, social and spiritual relationship with the Indian child's tribe and tribal community; and

"(5)   The importance to the Indian child of the Indian tribe's ability to maintain the tribe's existence and integrity in promotion of the stability and security of Indian children and families."

We start with the operative term "finds." ORS 419B.656(3)(a)(B). To the extent that it requires an action, that action is, initially at least, assigned to "[t]he court." *Id*. That is, as mother argues, that provision appears to contemplate the juvenile court making the required finding rather than deferring to the tribe on that point. The court's task of "find[ing]," however, is circumscribed by the specific finding that the TCA statute contemplates—whether TCA is "in the Indian child's best interests, *as described in ORS 419B.612*," *id*. (emphasis added)—and the assigned methodology for making that determination—that is, "in consultation with the Indian child's tribe," ORS 419B.612. Although we begin, as always, with the text, that immediate context ultimately persuades us that the juvenile court did not err in its application of the TCA statute.

The word "find[]" is not defined in ORICWA or in ORS chapter 419B; thus, we turn to that term's plain meaning. *Muliro*, 359 Or at 745-46. As this court explained in *State v. A. R. H.*,

"in the legal context, 'to find' generally refers to a trial court's factual determinations. *See Arvidson v. Liberty Northwest Ins. Corp.*, 366 Or 693, 709, 467 P3d 741 (2020) (explaining that, in 'legal proceedings, the phrase 'to find' is often, perhaps predominantly, used to refer to a specific type of determination by a tribunal: a resolution of *factual* disputes' (emphasis in original)); *see also Black's Law Dictionary* [766] (11th ed 2019) (defining 'find' as '[t]o determine a fact in dispute by verdict or decision'); Bryan A. Garner, *A Dictionary of Modern Legal Usage* (2d ed 1995)

(explaining that the 'court properly makes *findings of fact* and *holdings* or *conclusions of law*' (emphases in original)).”

371 Or 82, 90, 530 P3d 897 (2023). However, we have also held that “find” can carry a broader, ordinary meaning: “the act of making a decision”—including a decision that is not “on the merits.” *Arvidson*, 366 Or at 710. Thus, although the legislature's choice of the term “finds” *could* reflect its intent to require the juvenile court to conduct an evidence-based, factual inquiry, that is by no means certain. And, beyond juxtaposing “finds” with “[t]he court,” the use of the specific term “finds” does not substantially inform us whether and to what extent the court's “find[ing]” must be independent of what a tribe may find as a result of its own processes.

The immediate context, however, is illuminating. First is the limitation that the TCA statute places on the required best-interests inquiry. That statute does not invite an open-ended, factual inquiry into what may or may not be in the best interests of an Indian child; rather, it focuses the inquiry on the “Indian child's best interests, as described in ORS 419B.612[.]” And ORS 419B.612, in turn, dictates what things are to be considered in determining the child's best interests. Although not explicitly tied to a child's “best interests” in the permanency statute, several of those considerations are matters that, like the determination of the appropriate permanent placement, were necessarily part of the juvenile court's assessment at the permanency stage. Those include the protection of the Indian child's “safety, well-being, development and stability,” the “prevention of unnecessary out-of-home placement,” and the prioritization of placement in accordance ORS 419B.654's placement preferences, ORS 419B.612(1) - (3), all of which correspond closely to the determinations that a court must make at the permanency stage and that the juvenile court could confirm by reference to a child's permanency judgment and related case file.

For example, by finding in the permanency judgments that DHS had made active efforts to make it possible for mother's children to safely return home       ,       ORS 419B.476(5)(k)(A), and that, despite those active efforts, continued removal of the children was necessary to

prevent serious emotional or physical damage to them, ORS 419B.476(5)(k)(B), the juvenile court had expressly contemplated whether "out-of-home placement" could be prevented. *See* ORS 419B.612(2) (including that consideration in best-interests inquiry).[22] Similarly, the permanency judgments confirmed that TCA appropriately prioritized placement in accordance ORS 419B.654's placement preferences, ORS 419B.612(3), as the permanency statute expressly conditions changing an Indian child's plan on compliance with those preferences. Finally, permanency proceedings as a whole must prioritize a child's "health and safety." *E.g.,* ORS 419B.476(2)(a). And even though the permanency statute uses slightly different terminology than the best-interests statute, *see* ORS 419B.612(1) (referring to child's safety, well-being, development, and stability), we view the two as directed at the same concerns, whether it be through the permanency statute's broad terminology—"health and safety"—or through that statute's additional requirements discussed above.

The remaining considerations under ORS 419B.612 are illuminating in a different way. Those again are:

"(4) The value to the Indian child of establishing, developing or maintaining a political, cultural, social and spiritual relationship with the Indian child's tribe and tribal community; and

"(5) The importance to the Indian child of the Indian tribe's ability to maintain the tribe's existence and integrity in promotion of the stability and security of Indian children and families."

ORS 419B.612. In addition to being matters uniquely focused on the interests of *Indian* children and their tribes—areas in which ORICWA expressly recognizes tribes as having their greatest authority—those are matters within the particular expertise of the tribes. Indeed, in this case those were among the matters that England, the tribe's qualified expert, testified to at the permanency hearing. And as to those matters, it would make little sense to have a juvenile

---

[22] ORS 419B.645(1) defines "active efforts" as "efforts that are affirmative, active, thorough, timely and intended to maintain or reunite an Indian child with the Indian child's family."

court impose its unilateral view regarding an Indian child's best interests and thereby effectively veto a tribe's determination of an Indian child's best interests and its corresponding implementation of TCA.

In our view, the TCA statute cannot be read to grant that unilaterally to the juvenile court. That is in part because, by incorporating the description of best interests found in ORS 419B.612, the TCA statute necessarily also incorporates the other statute's requirement that the court consider an Indian child's best interests "in consultation with the Indian child's tribe[.]" That is, unlike, for example, certain provisions requiring the testimony of a QEW, *e.g.*, ORS 419B.340, the requirement in ORS 419B.612 is not merely that the juvenile court hear input from a child's tribe—it must consider what is in the Indian child's best interests "in consultation with" the tribe, which, in that statute, more suggests a joint decision between the court and tribe than a decision ultimately left up to the court alone. *Cf.* ORS 419B.627(1) (recognizing in other contexts that tribal court's jurisdiction over an Indian child is concurrent with the juvenile court's).

Given that understanding of the "find[ing]" that the TCA statute envisions, we conclude that the juvenile court did not err in accepting the tribe's TCA resolution. That is not to say that a juvenile court is free to "rubber stamp" a TCA and wholly defer to a tribe's determination of what is in an Indian child's best interests. But that is not what we understand the juvenile court to have done in this case. In addition to the explicit best-interests finding in the TCA resolution,[23] the court had for its consideration: the permanency judgments with their various findings; its own understanding based on its ongoing consultation with the children's tribe that the tribe continued to believe that the TCA it had completed was in the children's best interests; the view expressed through the children's attorney that TCA was in their best interests; and DHS's proposed

---

[23] We note that, in its submission, the tribe also stated that the permanent plan of TCA had, "under Oregon state law," been "determined to be in the children's best interests," likely referring to the finding in the permanency judgments that TPR was not in their best interests because the court found that TCA was an appropriate permanent placement and that the tribe consented to TCA.

finding in the orders it submitted that TCA was in the children's best interests "as described in ORS 419B.612." The court also could confirm from the content of the TCA resolution itself that it was consistent with the expectations set at the permanency hearing, including the children's continued placement in accordance with the preferences under ORS 419B.654 and, relatedly, placement with an Indian relative. Finally, the court had before it the tribe's adoptive home study, which, in addition to providing further detail on some of the above matters, was separately subject to the court's approval. *See* ORS 419B.656(2)(b) (stating conditions for acceptance of a TCA home study conducted by a tribe). That record sufficed to permit the juvenile court to assure itself that the TCA completed by the children's tribe, like the TCA envisioned at the time of their permanency hearing, was in their best interests "as described in ORS 419B.612[.]" ORS 419B.656(3)(a)(B).

Ultimately, by signing DHS's proposed orders, the juvenile court expressly made the finding contemplated under ORS 419B.656(3)(a)(B), and, as noted, mother does not dispute the adequacy of the record to support that finding. Although mother's position on review is that the juvenile court was required to conduct a different kind of hearing before making that finding, we disagree. The TCA statute did not entitle mother to challenge the TCA resolution or implementation through her own evidence of progress towards ameliorating the bases of the juvenile court's jurisdiction, which, among other things, is not among the best-interests considerations that ORS 419B.612 describes. And to the extent that there was anything in the home study to suggest that the TCA was *not* in the children's best interests, that would be ascertainable from the home study itself and therefore would not require an evidentiary hearing. The juvenile court's obligation was to satisfy itself that the TCA resolution (and the home study) complied with the statutory requirements set forth in the TCA statute, including that, in light of the document itself and the record before the court, it reflected the court's and the tribe's consideration of the ORS 419B.612 factors and was in the best interests of mother's children. By agreeing to sign the orders and judgments of TCA, which included the court's express finding that TCA

was in the children's bests interests, the juvenile court satisfied that obligation and did not err.

The decision of the Court of Appeals and the judgments of the circuit court are affirmed.

**BUSHONG, J.,** concurring.

This case presents an important question under the Oregon Indian Child Welfare Act (ORICWA) regarding juvenile court proceedings to consider a tribal customary adoption (TCA) for an Indian child. Mother contends that the juvenile court violated ORICWA by failing to conduct a contested evidentiary hearing when it approved the TCA that the Pit River Tribe had submitted to the court for S and P, two children who are members of that tribe. I agree with the majority opinion's conclusion that nothing in ORICWA, as amended to authorize TCAs in some circumstances, required the juvenile court to conduct such a hearing at that time. I write separately to emphasize the importance that tribal sovereignty plays in interpreting the provisions of ORICWA that address TCAs.

As I will explain, the legislature, mindful of tribal sovereignty when it enacted ORICWA and amended it to provide for a TCA as an appropriate option for an Indian child, was careful to respect the role that tribes would play in defining the specific TCA that will apply to a particular child. That is, the legislature required the juvenile court to determine whether a TCA was an appropriate option; however, it left it to the tribe to determine the terms of the TCA that will apply to a particular child.

Once the tribe made that determination, the juvenile court was required to give it full faith and credit, subject only to making the limited findings specified in the statute. None of those findings required the juvenile court to conduct a contested evidentiary hearing before approving the TCA that the tribe had determined would be appropriate for S and P.

This sharing of responsibility between the two sovereigns—the state of Oregon, acting by and through the juvenile court, and the tribe—is an important aspect of

ORICWA. That shared responsibility helps explain why the statute did not require the juvenile court to hold the contested evidentiary hearing that mother sought when the Pit River Tribe submitted the TCA that it had developed for S and P. I do not understand the majority opinion to say anything to the contrary in its thorough analysis of the text and context of the relevant statutory provisions.

In ORICWA, the legislature "recognize[d] the inherent jurisdiction of Indian tribes to make decisions regarding the custody of Indian children." ORS 419B.600. The stated policy of the statute was to "protect the health and safety of Indian children and the stability and security of Indian tribes and families by promoting practices designed to prevent the removal of Indian children from their families and, if removal is necessary and lawful, to prioritize the placement of an Indian child with the Indian child's extended family and tribal community." *Id.* The legislature required juvenile courts to "give full faith and credit to the public acts, records and judicial proceedings of an Indian tribe applicable to an Indian child custody proceeding." ORS 419B.663. Those provisions reflect the legislature's acknowledgement of tribal sovereignty.

When the legislature amended ORICWA to provide for TCAs, it explained that a TCA furthers the legislature's policy by providing for a permanency option that is completed by the Indian child's tribe according to the "tribal custom, traditions or law of the child's tribe," an option that could occur "without the termination of parental rights." ORS 419B.656(1). In furtherance of that policy, the legislature required the juvenile court to accept the home study conducted by the tribe if it included certain required information, used "the prevailing social and cultural standards of the Indian child's tribe as standards for evaluation of the proposed adoptive placement," and was completed before the child's placement, unless the proposed placement was the child's current foster care placement. ORS 419B.656(2)(b)(B).[1]

---

[1] The specific information that was required to be included in the home study included criminal background checks, and an evaluation of the background, safety and health information of the proposed placement. ORS 419B.656(2)(b)(A) and (C).

The TCA statute highlighted the importance of two sovereigns with shared responsibilities by including a second "full faith and credit" provision in addition to ORICWA's existing provision. *See* ORS 419B.663 (generally requiring juvenile courts to give "full faith and credit" to official tribal acts in connection with an Indian child custody proceeding); ORS 419B.656(3)(b) (stating that a juvenile court "shall afford full faith and credit to a tribal customary adoption" approved by the tribe and accepted by the court).

In short, the legislature created a permanency option for Indian children that includes a separate process within the tribe's jurisdiction. This acknowledges, consistent with tribal sovereignty, that tribes and tribal courts serve as active decisionmakers in the tribal customary adoption of an Indian child, with the state juvenile court giving full faith and credit to the tribe's decision if it meets the requirements of ORS 419B.656. The legislature specified in that statute the findings that the juvenile court must make to approve the TCA developed by the tribe, but it did not describe the process the juvenile court would use to make those findings.

Here, the juvenile court concluded after a contested evidentiary hearing under the permanency statute, ORS 419B.476, that changing the plan from reunification to a TCA as the appropriate permanent placement was in the best interests of S and P. I agree with the majority opinion that, under the circumstances, the juvenile court was not required to conduct another contested evidentiary hearing after the tribe submitted the TCA that it had developed for those children for juvenile court approval under ORS 419B.656. Having highlighted the importance of tribal sovereignty in this decision-making process, I respectfully concur.

Masih, J., joins in this opinion.